# *UNITED STATES DISTRICT COURT FOR THE*
# *WESTERN DISTRICT OF MISSOURI*
# *SOUTHERN DIVISION*

MICHAEL A. TABOR,                                    )
                                                     )
                     Petitioner,                     )
                                                     )
          vs.                                        )          Case No.  11-3492-CV-C-RED-P
                                                     )
DOUG PRUDDEN,                                        )
                                                     )
                     Respondent.                     )

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Tipton Correctional Center in Tipton, Missouri, has filed pro se a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2004 conviction and sentence for animal abuse, which was entered in the Circuit Court of Pulaski County, Missouri.  Petitioner's conviction was affirmed on direct appeal (State v. Tabor, 197 S.W.3d 247 (Mo. Ct. App. 2006); (Respondent's Exhibit D)), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (Tabor v. State, 344 S.W.3d 853 (Mo. Ct. App. 2011); (Respondent's Exhibit I)).  Petitioner raises three (3) grounds for relief.  Respondent contends that all three grounds are without merit.

## FACTUAL BACKGROUND

In affirming the motion court's denial of petitioner's 29.15 motion, the Missouri Court of Appeals, Southern District, explained the following:

> On the afternoon of February 24, 2004, Movant and Robert Swick spent several hours trying to catch a nine-month-old colt in an effort to halter break it.  The colt was not accustomed to being handled and was "just running everywhere." Swick eventually left, telling Movant that he would return the next day to continue trying to catch the colt.
>
> Upon Swick's departure, Movant drove to a house where Mark "Matt"

Thomas, Charles Anderson, and a few other high school students were "hang[ing] out." Movant asked the boys for help "getting his horses up" from a larger pasture to a smaller one. Although Thomas and Anderson did not know Movant, they and two others agreed to help Movant because they had experience with horses. They got into Movant's vehicle, a minivan he had borrowed from Judith Milholland, his neighbor and landlord.

Movant drove the group to a farm located off Highway N. They moved several horses into a smaller adjoining area, closer to the smaller pasture. The nine-month-old colt was in this group and was skittish and obviously frightened of humans. When darkness fell, two of the students left, but Thomas and Anderson stayed.

As Thomas and Anderson worked to move the horses into the smaller pasture, Movant decided that he wanted to renew his attempts to halter break the unruly colt. Thomas and Anderson got hold of the colt and dressed it with a halter, which had a lead rope approximately six to eight feet long attached to it. After about twenty to twenty-five minutes, Thomas was able to get the colt to follow him. Movant then approached Thomas and tried to lead the colt, but the colt would not lead. Movant told Thomas that he would " 'teach the fucker' to lead." Insisting that he knew a better way to lead the colt, Movant then tied the lead rope to the spare-tire compartment on the rear of the minivan. There was a five- to six-feet distance between the colt and the van.

Movant drove the minivan—with Thomas in the front passenger seat and Anderson in the rear passenger seat—onto Highway N, which is a paved highway. Although Movant initially drove slowly, he quickly sped up, saying to Thomas, "Thirty miles per hour. Sure is fast. Do you think he can do thirty-five?" Thomas saw the speedometer reach thirty-five miles per hour. After reaching that speed, Movant slowed down to between ten and twenty miles per hour. The colt's head was pulled down toward the ground where the lead rope attached to the van, and the colt was consistently pulling back against the van. Movant pulled into a driveway, turned the van around, and then turned off of Highway N onto a gravel road. While Movant was turning the van, the colt stumbled through a ditch.

Once on the gravel road, Movant stopped the van and got out to check on the colt. The colt's heartbeat was "very fast," and it was breathing heavily and soaked in sweat. After a few minutes, Movant started driving again, still on the gravel road.

Shortly thereafter, Movant stopped the van a second time, and this time Thomas and Anderson got out to check on the colt. Both were concerned for the colt's safety and wellbeing. The colt was still sweating, lathered, and breathing heavily. Additionally, this time, the colt was "hotfooting"—continually lifting all four hooves—in an effort to relieve pain in its hooves. Movant then continued

2

driving, but stopped a third time when Thomas and Anderson told Movant they thought the lead rope had broken. Once the van was stopped, Thomas and Anderson told Movant that Anderson's grandmother lived nearby and left; they fabricated this story in order to persuade Movant to stop and let them leave.

Movant then returned to Milholland's home, where he said to her, "I think I fucked up," and he showed her the colt. The colt was "shaking violently" and bloody under its forelegs, on its back quarter, and near its hooves. Movant told Milholland that the colt had gotten caught in a fence and he had pulled it out. Milholland ran inside, got gauze and peroxide, and attempted to administer aid to the colt; when Milholland approached the colt it would stand up, but otherwise it would lie down. Once Milholland cleaned the colt, she moved it into her garage and covered it with blankets. She checked on the colt periodically until about 3:00 a.m.

The following morning, the colt was still shaky and scared, but its bleeding had "pretty much stopped." Although it was lethargic and did not want to move, Milholland moved the colt outside, where she used water to wash any spots on the colt she had missed the previous evening. Milholland then called Swick, who took the colt to his farm. Swick gave the colt pain medication, and the colt eventually dragged itself around the barn to eat, using only its front legs. Swick kept the colt at his farm for about a week.

On March 5, 2004, Missouri Humane Society Cruelty Investigator Brett Huff, along with Laclede County Sheriff's Investigator George Young, went to Swick's home with a search warrant and seized the colt. When they arrived, the colt had an accelerated heart rate; muscle twitching in its back region; and dirty, matted fur. It also was hotfooting and had injuries to its neck, lower jaw, shoulders, knees, feet, and the inside of its legs. Huff and Young transported the colt to Mid–Rivers Equine Center and then made contact with Movant. They read Movant his Miranda rights, after which Movant agreed to talk. Movant stated, "I messed up," explaining that he tied the colt to the van and dragged it with its head low to the ground.

Tim Ellis, a veterinarian at Mid–Rivers Equine Center, examined the colt when it was brought in. The colt had multiple injuries, including old wounds around its left eye and right elbow, but the most "devastating" wounds were on the colt's hind feet. The colt's hind hooves and bone were worn away all the way into the joint, indicating that the colt had objected to being dragged behind the van and had braced its legs to resist.

Ellis attempted to save the colt by cleaning the wounds and administering antibiotics and painkillers. He then tried to surgically remove all of the infected tissue from the hooves. However, the severity of the infection and the colt's uncontrollable pain led to the animal being euthanized.

3

Movant was charged as a prior offender with the class D felony of animal abuse, pursuant to section 578.012. He was found guilty following a jury trial and subsequently sentenced as a prior offender to seven years' imprisonment. His conviction and sentence were affirmed by this Court in State v. Tabor, 197 S.W.3d 247 (Mo.App.2006).

Tabor, 344 S.W.3d at 854-56 (footnotes omitted); Respondent's Exhibit I, pp. 1-5.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc), cert. denied, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

**GROUND ONE**

In Ground One, petitioner asserts a claim of ineffective assistance of trial counsel in that counsel opened the door to testimony regarding petitioner's prior acts of animal abuse and failed to object to the State's follow-up questions on the prior acts despite knowing of a Humane Society report that referenced prior acts of abuse of horses by petitioner and despite having filed a successful motion in limine concerning prior bad acts. Doc. No. 1, pp. 13-14. The Missouri Court of Appeals, Southern District, denied Ground One as follows:

---

[1]In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

At trial, Movant's trial counsel asked Milholland on cross-examination if she had ever seen Movant "beat" any of his horses, to which she replied that she had. Trial counsel then clarified, saying, "Now, beat is a hard word. Not strike, but beat?" Milholland then recanted, saying that she had not seen Movant beat any of his horses. The State, on re-direct, then asked Milholland if she had ever seen Movant "mistreat" a horse, and Milholland replied in the affirmative. Milholland testified that she had seen Movant both smack and kick at the "private parts" of a horse named Whisky on occasions when the horse "exposed" its genitals, saying, "Put it away" or "Knock it off." Milholland stated on re-cross-examination that she did not call the Humane Society or police about Movant's behavior and that she had only told Movant that he should not do those things.

Trial counsel similarly asked Swick on re-cross-examination if Swick had ever seen Movant do anything "truly abusive" to Whisky. Swick answered, "I think [Movant] will recall me probably saying on one or two occasions that the horse really had to love him or he'd kill his ass." On re-direct, the State asked Swick to expound upon that answer, and Swick testified that Movant rode Whisky "pretty hard and in sort of bad weather sometimes." Swick further testified that Movant did not have a stable for Whisky and that Whisky "spent a lot of time in the woods tied up to a tree where [Movant] resided." The State then asked about Whisky's penis, and Swick stated that Whisky had injured its penis, causing it to become engorged with blood. Swick saw Movant use a pocketknife to "perforate" Whisky's penis in a supposed effort to relieve pressure on the horse's penis, which Movant claimed to have seen a veterinarian do. Later on, Investigator Huff from the Humane Society of Missouri testified, in response to a question from the State, that there were actually three horses he was concerned with as part of the investigation, one of which was the nine-month-old colt. Trial counsel did not object to any of these questions by the State on the ground that they constituted references to uncharged criminal acts.

. . . .

In order to prevail on a post-conviction motion alleging ineffective assistance of counsel, a movant must overcome a strong presumption of competence and demonstrate, by a preponderance of the evidence, that (1) counsel did not exercise the customary skill and diligence that a reasonably competent attorney would have exercised under the same or similar circumstances, and (2) counsel's failure to exercise such skill and diligence prejudiced the movant in some way. Strickland v. Washington, 466 U.S. 668, 687, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Sanders v. State, 738 S.W.2d 856, 857 (Mo. banc 1987). To satisfy the performance prong, a movant "must overcome the presumptions that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." State v. Simmons, 955 S.W.2d 729, 746 (Mo. banc 1997). In order to demonstrate the requisite

5

prejudice, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Strickland defines "a reasonable probability" as "a probability sufficient to undermine confidence in the outcome." Id. In reviewing such claims, we are not required to examine both prongs; if a movant fails to satisfy the performance prong, we need not consider the prejudice prong, and vice versa. Strickland, 466 U.S. at 697, 104 S.Ct. 2052; Sanders, 738 S.W.2d at 857.

. . . .

In his first point relied on, Movant contends that trial counsel was constitutionally ineffective for, first, questioning Milholland and Swick about Movant's treatment of other horses and, second, failing to object to the State's follow-up questions to those two and Huff regarding Movant's treatment of other horses. We disagree.

Movant's trial counsel testified that he did not intend to elicit evidence that Movant mistreated other horses; rather, in reliance upon Movant's own assurance to counsel that "he'd never had any animal abuse issues ... [and] always took care of his horses well[,]" Movant asked Milholland and Swick if they had ever witnessed Movant mistreat any horses in order to proffer evidence that Movant did not abuse his animals. Trial counsel can rely on a defendant's statements in investigating a case and developing trial strategy. See Gleason v. State, 329 S.W.3d 714, 718 (Mo.App.2010); Cochrell v. State, 537 S.W.2d 584, 585 (Mo.App.1976). Movant told trial counsel that he had never abused any animals, rendering counsel's questions made in reliance upon that statement reasonable trial strategy. Movant cites no authority that required Movant's trial counsel to discount his own client's statements to him about how he treated his animals in favor of the suspicions of abuse based upon double hearsay contained in a third party's report provided during discovery. If the suspicions in the report were correct, then any adverse trial consequences were the result of Movant's misleading statements to trial counsel and were not due to the ineffectiveness of trial counsel.

Movant also takes issue with trial counsel's failure to object to the State's questions to Milholland, Swick, and Huff regarding Movant's treatment of other animals. Trial counsel admitted, however, that he had opened the door to such questions with his cross-examination of both Milholland and Swick. Once trial counsel asked Milholland and Swick if either had seen Movant mistreat his horses, this topic became a proper one for re-direct questioning, and any objections trial counsel might have made would have been overruled. See Middleton v. State, 103 S.W.3d 726, 741 (Mo. banc 2003). "Counsel is not ineffective for failing to make non-meritorious objections." See State v. Clemons, 946 S.W.2d 206, 228 (Mo. banc 1997). Moreover, while Huff's testimony did not directly tie Movant to the abuse of

6

other horses, even if it had, such evidence was merely cumulative to Milholland's and Swick's testimony. The failure to object to cumulative evidence does not amount to ineffective assistance of counsel. Coday v. State, 179 S.W.3d 343, 358 (Mo.App.2005). Movant's first point is denied.

Tabor, 344 S.W.3d at 857-60 (footnotes omitted); Respondent's Exhibit I, pp. 6-7, 9-11.

In Strickland, the Court held that, in order for petitioner successfully to assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland 466 U.S. at 687-88. This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in Strickland." Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999), cert. denied, 530 U.S. 1265 (2000).

 "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. To satisfy the prejudice prong, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Strickland, 466 U.S. at 694.

In applying the standard articulated in Strickland, the Missouri Court of Appeals, Southern District, found that petitioner's counsel was not ineffective because counsel's decision to rely on petitioner's statements concerning how he treated his animals over the Humane Society report was reasonable trial strategy. Respondent's Exhibit I, pp. 10-11. Furthermore, the state court found that

any objections to the State's cross-examination on prior incidents of abuse would have been without

merit, so counsel was not ineffective for failing to raise non-meritorious objections.  Because the state

court's determinations were not based upon "unreasonable determination[s] of the facts in light of the

evidence" or misapplications of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2),

Ground One will be denied.

## GROUND TWO

In Ground Two, petitioner asserts a second claim of ineffective assistance of counsel in that

counsel failed to submit an instruction to the jury concerning the  lesser-included offense of Class

A misdemeanor animal abuse.  Doc. No. 1, p. 15.  The Missouri Court of Appeals, Southern District,

denied Ground Two as follows:

> In his second point, Movant contends that trial counsel was ineffective for failing to submit a lesser-included-offense instruction to the jury regarding misdemeanor animal abuse.  Again, we disagree.
>
> In order to establish a claim of ineffective assistance of counsel for failure to submit a lesser-included-offense instruction, Movant must demonstrate that "the evidence would have required submission of a lesser [-]included[-]offense instruction had one been requested, that the decision not to request the instruction was not reasonable trial strategy, and that ... [M]ovant was thereby prejudiced."  Jackson v. State, 205 S.W.3d 282, 285 (Mo.App.2006).  "An objectively reasonable choice not to submit an available instruction does not constitute ineffective assistance of counsel."  Id. (citing State v. Shurn, 866 S.W.2d 447, 469 (Mo. banc 1993); Love v. State, 670 S.W.2d 499, 502 (Mo. banc 1984)).  Moreover, counsel is permitted to adopt an "all-or-nothing" strategy, foregoing an instruction on a lesser-included offense in the hope of an acquittal.  State v. Dexter, 954 S.W.2d 332, 344 (Mo. banc 1997).
>
> Trial counsel testified that he considered proffering the misdemeanor instruction but, after discussing the matter with Movant and co-counsel, they concluded that the State had not met its burden in proving the felony complaint.  Thus, with Movant's agreement, trial counsel "went with the felony alone in anticipation of an acquittal."  This amounts to an "all-or-nothing" approach.  See id.  He also testified that the decision was a strategic one and that he did not want "to assist [the State] in making [its] own case."  Movant testified at the evidentiary

8

hearing that trial counsel assured Movant he would submit the misdemeanor instruction and that submission of the misdemeanor instruction was a condition of Movant not taking the stand. This testimony, which conflicted with trial counsel's testimony, simply gave rise to a credibility determination, and we are bound to defer to the motion court's credibility determinations. See Zink, 278 S.W.3d at 192. As trial counsel's decision was reasonable trial strategy, no further discussion of this point is required. The motion court did not clearly err, and Movant's second point is denied.

The Missouri Court of Appeals, Southern District, found that counsel's decision to not submit the lesser-included offense instruction and instead to seek an acquittal was reasonable trial strategy. Respondent's Exhibit I, pp. 12-13. As to the state court's decision to credit trial counsel's testimony over that of petitioner, federal courts defer to state court determinations of credibility. Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) ("Federal habeas review 'gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (quoting Marshall v. Lonberger, 459 U.S. at 434), cert. denied, 543 U.S. 1022 (2004). Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground Two will be denied.

### GROUND THREE

In Ground Three, petitioner asserts a claim of trial court error in that the jury instruction "misstated the law and lessened the state's burden of proof" by using an improper definition of torture and by obscuring the mens rea in the end of the instruction rather than "allowing the jury to read the necessary mental state in context with the entire statutory language." Doc. No. 1, p. 17. The Missouri Court of Appeals, Southern District, denied Ground Three as follows:

> . . . In his sole point relied on, [petitioner] complains that the jury instruction misled the jury; however, he did not offer an instruction that correctly tracks section 578.012 and, thus, seeks plain error review. See Sta te v. Wurtzberger, 40 S.W.3d

9

893, 897 (Mo. banc 2001) (holding that an appellant was only eligible for plain error review in the absence of the offer of an instruction that correctly tracks a statute). We decline such review and affirm the judgment.

Plain error review for a claim of instructional error is a two-step process. State v. Hibler, 21 S.W.3d 87, 96 (Mo.App. W.D.2000). First, the court must determine if the claim on its face establishes substantial grounds for believing an obvious and clear error resulting in manifest injustice has occurred. Id. Plain error exists where the trial court so misdirects or fails to instruct the jury that the instructional error affected the jury's verdict. Id. Plain error may still be reviewed under Rule 30.20 if a manifest injustice would otherwise occur. Wurtzberger, 40 S.W.3d at 898. "When an applicable MAI–CR instruction is available, that instruction must be given by the trial court as written, and its use will not constitute error." State v. Woodworth, 941 S.W.2d 679, 699 (Mo.App. W.D.1997).

The instruction given at the trial was patterned on MAI–CR 3d 332.62. Appellant objected to the instruction because "it's not in proper form with the statute" in that the "MAI jury instruction[ ] 332.62 do[es] not comport with what the statutory requirement is with regard to finding a person guilty of a felony in this particular type of case." Appellant argued that the verdict director he submitted requires "a separate finding about the torture incident." Thereafter, Appellant requested that the court consider an alternative director, which was "directly lifted out of the statute."

Section 578.012 provides:

1. A person is guilty of animal abuse when a person:
. . . .
(2) Purposely or intentionally causes injury or suffering to an animal; or
. . . .
2. Animal abuse is a Class A misdemeanor, unless ... the suffering involved in subdivision (2) of subsection 1 of this section is the result of torture or mutilation, or both, consciously inflicted while the animal was alive, in which case it is a class D felony.

The submitted instruction, Instruction No. 5, was:

If you find and believe from the evidence beyond a reasonable doubt:
First, that on or about February 24, 2004, in the County of Laclede, State of Missouri, the defendant caused suffering to a colt, and

10

Second, that the defendant did so purposely, and

Third, that the defendant tortured the animal, inflicting suffering upon it while it was still alive, then you will find the defendant guilty of animal abuse.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction, the term "purposely" means a person acts purposely, or with purpose, with respect to the person's conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result.

Instruction No. B, as tendered by Appellant, reads as follows:

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about February 24, 2004[,] in the County of Laclede, State of Missouri, the defendant caused suffering to a colt, and

Second, that the defendant did so purposely, and

Third, that the defendant tortured the animal, consciously inflicting suffering upon it while it was still alive, then you will find the defendant guilty of animal abuse.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

The difference in the two instructions is that Appellant added the word "consciously" to the third paragraph and, in conjunction with the submission of that verdict director, he also tendered Instruction No. A, which defined "consciously" to mean "fully aware of or sensitive to something." Appellant obtained the definition from a Random House dictionary because MAI failed to define "consciously" as used in the statute. The trial court refused Instruction No. B stating that "consciously" was not in the third paragraph because the definition of "purposely" in the first paragraph includes a reference to "conscious object to engage in that conduct or cause that result." The trial court stated, "the structure of the MAI instructions the Supreme Court has chosen in its wisdom not to include that definition in the MAI instructions, and therefore, it is denied by the Court." We agree.

We find Appellant has failed to facially establish substantial grounds for believing a manifest injustice or miscarriage of justice has occurred. The jury instruction was properly patterned after a Missouri Approved Instruction. To find Appellant guilty of the class D felony of animal abuse, the jury had to find that

Appellant purposefully caused injury or suffering to the colt as a result of torture or mutilation, or both, consciously inflicted while the animal was alive. We do not find plain error in the submitted instruction. As written, the instruction did not lessen the burden of proof. The trial court did not err in refusing the addition of "consciously" in the third paragraph of the verdict director and the dictionary definition of "consciously." The point is denied.

The judgment is affirmed.

State v. Tabor, 197 S.W.3d at 247-250 (footnotes omitted); Respondent's Exhibit D, pp. 1-4.

Jury instructions involve questions of state law, and a federal court is not to "reexamine state-court determinations on state-law questions." Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). To warrant federal habeas corpus relief for a state prisoner, the jury instruction must constitute "a fundamental defect that resulted in a complete miscarriage of justice, or an omission inconsistent with rudimentary demands of a fair trial." Liggins v. Burger, 422 F.3d 642, 651 (8th Cir. 2005) (citation and internal quotations omitted).

The Missouri Court of Appeals, Southern District, found that the trial court's refusal to add "consciously" in the third paragraph of the verdict director and the dictionary definition of "consciously" in the instruction did not amount to a complete miscarriage of justice, nor did it render the trial unfair. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground Three will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004).

12

Because petitioner has not met this standard, a certificate of appealability will be denied. See 28

U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) the issuance of a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.


   /s/ Richard E. Dorr
RICHARD E. DORR
UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated: May 8, 2012.